1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

9   SONNY RAY SAMPSON,                        No. 1:14-CV-03136-JTR

10                  Plaintiff,                ORDER GRANTING
11                                            DEFENDANT'S MOTION FOR
        v.                                    SUMMARY JUDGMENT
12
13   CAROLYN W. COLVIN,
14   Commissioner of Social Security,
15                  Defendant.
16

17       **BEFORE THE COURT** are cross-Motions for Summary Judgment.  ECF

18   Nos. 14, 17.  Attorney Thomas A. Bothwell represents Sonny Ray Sampson

19   (Plaintiff); Special Assistant United States Attorney Franco L. Becia represents the

20   Commissioner of Social Security (Defendant).  The parties have consented to

21   proceed before a magistrate judge.  ECF No. 6.  After reviewing the administrative

22   record and the briefs filed by the parties, the Court **GRANTS** Defendant's Motion

23   for Summary Judgment and **DENIES** Plaintiff's Motion for Summary Judgment.

24                                **JURISDICTION**

25       Plaintiff filed an application for Supplemental Security Income (SSI) on July

26   20, 2010, alleging disability beginning on October 30, 2000.  Tr. 94, 209-15.  The

27   application was denied initially and upon reconsideration.  Tr. 128-34, 138-43.  On

28   August 11, 2011, an attorney advisor issued a fully favorable decision approving

ORDER GRANTING DEFENDANT'S MOTION . . . . - 1

Plaintiff's application and dismissing Plaintiff's request for hearing. Tr. 114-22. On March 7, 2012, the Appeals Council set aside the decision and remanded the case to an Administrative Law Judge (ALJ) for a hearing and a new decision. Tr. 123-26, 156-60.

On December 17, 2012, ALJ Ilene Sloan held a video hearing at which Plaintiff, represented by counsel, testified as did vocational expert (VE) Debra Lapoint. Tr. 34-93. The ALJ issued an unfavorable decision on March 8, 2013. Tr. 10-25. The Appeals Council denied review. Tr. 1-5. The ALJ's March 2013 decision became the final decision of the Commissioner, which is appealable to the district court pursuant to 42 U.S.C. § 405(g). Plaintiff filed this action for judicial review on September 22, 2014. ECF No. 1, 4.

## STATEMENT OF FACTS

The facts of the case are set forth in the administrative hearing transcript, the ALJ's decision, and the briefs of the parties. They are only briefly summarized here.

Plaintiff was 31 years old at the time of the hearing. Tr. 62. Plaintiff dropped out of school in sixth or seventh grade. Tr. 63. Plaintiff last worked in 2001 and 2002 when, together with his sister, he took care of his other sister's child. Tr. 67-69; *but see* Tr. 68 (Plaintiff thought he might have watched two of his sister's children). Plaintiff has never had a drivers' license and does not drive. Tr. 69. Plaintiff has difficulty reading, but looks at comic books and magazines. Tr. 80-81.

Plaintiff states he cannot work because he forgets things and he sometimes "lose[s] it . . . blow[s] up and . . . do[es] stuff unintentionally." Tr. 77.

Plaintiff spends most of his time playing video games, and considers himself a player of average skill, although he is sometimes confused by the buttons. Tr. 70, 80. Plaintiff can go grocery shopping with his sister, prepare microwave meals, clean the house, and mow the lawn. Tr. 75-76. Before his girlfriend moved

away, Plaintiff and his girlfriend would go to the mall and movies together.  Tr. 78.
Plaintiff takes care of his two dogs.  Tr. 81.

## STANDARD OF REVIEW

The ALJ is responsible for determining credibility, resolving conflicts in
medical testimony, and resolving ambiguities.  *Andrews v. Shalala*, 53 F.3d 1035,
1039 (9th Cir. 1995).  The Court reviews the ALJ's determinations of law de novo,
deferring to a reasonable interpretation of the statutes.  *McNatt v. Apfel*, 201 F.3d
1084, 1087 (9th Cir. 2000).  The decision of the ALJ may be reversed only if it is
not supported by substantial evidence or if it is based on legal error.  *Tackett v.
Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999).  Substantial evidence is defined as
being more than a mere scintilla, but less than a preponderance.  *Id*. at 1098.  Put
another way, substantial evidence is such relevant evidence as a reasonable mind
might accept as adequate to support a conclusion.  *Richardson v. Perales*, 402
U.S. 389, 401 (1971).  If the evidence is susceptible to more than one rational
interpretation, the court may not substitute its judgment for that of the ALJ.
*Tackett*, 180 F.3d at 1097; *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595,
599 (9th Cir. 1999).  Nevertheless, a decision supported by substantial evidence
will still be set aside if the proper legal standards were not applied in weighing the
evidence and making the decision.  *Brawner v. Secretary of Health and Human
Services*, 839 F.2d 432, 433 (9th Cir. 1988).  If substantial evidence supports the
administrative findings, or if conflicting evidence supports a finding of either
disability or non-disability, the ALJ's determination is conclusive.  *Sprague v.
Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987).

## SEQUENTIAL EVALUATION PROCESS

The Commissioner has established a five-step sequential evaluation process
for determining whether a person is disabled.  20 C.F.R. § 416.920(a); *see Bowen
v. Yuckert*, 482 U.S. 137, 140-142 (1987).  In steps one through four, the burden of
proof rests upon claimants to establish a prima facie case of entitlement to

disability benefits. *Tackett*, 180 F.3d at 1098-1099. This burden is met once claimants establish that physical or mental impairments prevent them from engaging in their previous occupations. 20 C.F.R. § 416.920(a)(4). If claimants cannot do their past relevant work, the ALJ proceeds to step five, and the burden shifts to the Commissioner to show that (1) the claimants can make an adjustment to other work, and (2) specific jobs exist in the national economy which claimants can perform. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193-1194 (2004). If claimants cannot make an adjustment to other work in the national economy, a finding of "disabled" is made. 20 C.F.R. § 416.920(a)(4)(i-v).

## ADMINISTRATIVE DECISION

On March 8, 2013, the ALJ issued a decision finding Plaintiff was not disabled as defined in the Social Security Act.

At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since July 20, 2010, the application date. Tr. 15.

At step two, the ALJ determined Plaintiff had the following severe impairments: history of polysubstance dependence/abuse, learning disorder not otherwise specified, borderline intellectual functioning, and antisocial personality disorder. Tr. 15.

At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. Tr. 16. The ALJ assessed Plaintiff's residual function capacity (RFC) and determined he had the ability to perform a full range of work, with the following nonexertional limitations:

> [Plaintiff] is able to understand, remember, and carry out simple, routine, and repetitive tasks. He is able to accept instructions from supervisors and able to have occasional and superficial interactions with both coworkers and the general public. [Plaintiff] is able to work in a predictable workplace environment with only occasional, routine changes.

ORDER GRANTING DEFENDANT'S MOTION . . . - 4

Tr. 19.

The ALJ concluded at step four that Plaintiff was not able to perform his past relevant work.  Tr. 23.

At step five, however, the ALJ determined that, considering Plaintiff's age, education, work experience and RFC, and based on the testimony of the VE, there were other jobs that exist in significant numbers in the national economy Plaintiff could perform, including the jobs of kitchen helper, automobile detailer, commercial cleaner, sandwich board carrier, cleaner II, harvest worker (vegetables), and yard laborer.  Tr. 23-24.

The ALJ thus concluded Plaintiff was not under a disability within the meaning of the Social Security Act at any time between July 10, 2010, and the date of the ALJ's decision.  Tr. 24-25.

## ISSUES

The question presented is whether substantial evidence supports the ALJ's decision denying benefits and, if so, whether that decision is based on proper legal standards.  Plaintiff contends the ALJ erred by (1) finding Plaintiff did not meet Listing 12.05C, (2) rejecting the opinions of Plaintiff's medical providers, (3) not crediting Plaintiff's subjective complaints, and (4) presenting the VE with an incomplete hypothetical question.

## DISCUSSION

**A.    Listing 12.05C**

If a claimant meets or equals an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings"), the claimant should be found disabled without further inquiry.  *Tackett*, 180 F.3d 1094; 20 C.F.R. § 416.920(d). Claimants have the initial burden of proving that their symptoms rise to the severity set forth in the Listings.  *Burch v. Barnhart*, 400 F.3d 676, 683 (9th Cir. 2005).  Once the claimant presents evidence in an effort to establish equivalence, the ALJ must compare the claimant's impairments to the Listing criteria.  *Id*.

Listing 12.05 consists of an "introductory paragraph with the diagnostic description for intellectual disability . . . and four sets of criteria (paragraphs A through D)." 20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing 12.00A ¶ 4. A claimant must meet the standard set forth in the introductory paragraph and at least one of the four listed criteria. *Id.* Listing 12.05 reads, in relevant part,

> Intellectual disability refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.

> The required level of severity for this disorder is met when the requirements in A, B, C, or D, are satisfied . . .

> C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function.

20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing 12.05.

An ALJ may reject a claimant's IQ scores if they are invalid. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.05C (requiring a "valid" IQ score to meet the Listing); *Thresher v. Astrue*, 283 F. App'x 473, 475 (9th Cir. 2008) ("We do not doubt that an ALJ can decide that an IQ score is invalid."). In determining an IQ score's validity, the ALJ may rely on external evidence of a score's invalidity, such as improper testing conditions or a claimant's participation in activities inconsistent with the IQ score. *See Thresher,* 283 F. App'x. at 475 n.6 (citing cases); *but see Gomez v. Astrue*, 695 F. Supp.2d 1049, 1057 (C.D. Cal. 2010) ("[T]he ALJ cannot disregard a valid IQ simply because other evidence in the record could support a finding of nondisability in the absence of such a score.").

In this case, the ALJ did not err in finding that Plaintiff's IQ scores were invalid and that Plaintiff did not meet Listing 12.05C. The ALJ did not simply disregard the IQ scores and cite other evidence in the record supporting a finding

of nondisability.  *Cf. Gomez*, 695 F. Supp.2d at 1057.  Instead, the ALJ carefully considered the IQ scores in the context of the psychological evaluations which contained the scores and cited specific statements within the evaluations that cast doubt on the validity of Plaintiff's IQ scores.  Tr. 18-19.  The ALJ found the full scale IQ score of 66 assessed by Dr. Mabee in November 2009, Tr. 265, invalid because Dr. Mabee noted that Plaintiff likely "over-report[ed] [his] psychological, cognitive, and somatic symptoms."  Tr. 18 (citing Tr. 271).  The ALJ found the full scale IQ score of 67 assessed by Dr. Toews in January 2013, Tr. 335, invalid because Dr. Toews noted that Plaintiff's motivation was "poor" and that "[n]on-intellective factors such as effort and motivation may have affected [the testing] results."  Tr. 18 (citing Tr. 335).

Plaintiff argues that the consistency in his IQ scores, assessed several years apart, bolsters the reliability of the IQ scores.  ECF No. 14 at 12.  This is not an unreasonable interpretation of the evidence.  But Dr. Mabee and Dr. Toews also both questioned Plaintiff's reporting and effort during the administration of their respective tests; therefore, the similarity of Plaintiff's IQ scores in 2009 and 2013 might also have been caused by Plaintiff's questionable performance at both of the two exams.  When the evidence is susceptible to more than one reasonable interpretation, the Court must defer to the findings of the ALJ.  *Burch*, 400 F.3d at 680-81.

In conclusion, the ALJ did not err in relying on external evidence to find Plaintiff's IQ scores invalid.  Substantial evidence supports the ALJ's finding that Plaintiff's IQ scores were invalid due to Plaintiff's over-reporting and poor effort and motivation during the administration of the two IQ tests.

**B.    Credibility**

Plaintiff contests the ALJ's adverse credibility determination.  ECF No. 14 at 20.

It is generally the province of the ALJ to make credibility determinations,

*Andrews*, 53 F.3d at 1039, but the ALJ's findings must be supported by specific cogent reasons, *Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990). Absent affirmative evidence of malingering, the ALJ's reasons for rejecting the claimant's testimony must be "specific, clear and convincing." *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996). "General findings are insufficient: rather the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995).

In this case, the ALJ found Plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however, Plaintiff's statements concerning the intensity, persistence, and limiting effects of these symptoms were not credible. Tr. 19. The ALJ reasoned that Plaintiff was less than credible because (1) his activities of daily living (ADL) contradicted his reported limitations; (2) routine treatment notes indicate "normal psychiatric observations"; (3) Plaintiff did not seek mental health treatment; and, (4) Plaintiff inconsistently reported his drug and alcohol use and the reasons why he stopped attending school. Tr. 19-20. The ALJ did not find Plaintiff was malingering.

## 1.    ADL

The ALJ's first reason for discounting Plaintiff's credibility, i.e., that his symptom testimony was inconsistent with his ADL, is not a specific, clear, and convincing reason.

"[D]aily activities may be grounds for an adverse credibility finding if a claimant is able to spend a substantial part of his day engaged in pursuits involving performance of physical functions that are transferable to a work setting." *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007) (internal quotation marks omitted). A claimant need not be "utterly incapacitated," however, to be eligible for benefits. *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989).

The ALJ pointed out that Plaintiff was able to go grocery shopping, prepare his own meals (mostly by microwave), clean the house, do yard work in the

summer, walk across town to get tobacco, walk to Alcoholics Anonymous
meetings twice a week, take care of two dogs, read comic books, shower, attend
appointments on a daily basis, accompany girlfriend to her appointments, use
public transportation, play online video games for hours at a time, and watch
movies.  Tr. 19-20.

In is unclear whether Plaintiff's ADL indicate that he "is able to spend a
substantial part of his day engaged in pursuits involving performance of physical
functions that are transferable to a work setting."  *Orn*, 495 F.3d at 639.
Furthermore, Plaintiff does not argue that he is physically incapable of performing
ADL.  Because Plaintiff's ADL do not necessarily contradict his reporting of his
mental impairments, this reason, standing alone, would not be enough to discredit
Plaintiff.  But given the additional reasons given by the ALJ, discussed *infra*, the
undersigned finds any error harmless.  *See Tommasetti v. Astrue*, 533 F.3d 1035,
1038 (9th Cir. 2008) (An error is harmless when "it is clear from the record that the
. . . error was inconsequential to the ultimate nondisability determination.").

### 2.    Normal psychiatric observations

The ALJ's second reason for discounting Plaintiff's credibility, i.e., that
Plaintiff's regular treatment notes document "normal psychiatric observations," is
a specific, clear, and convincing reason.

An ALJ may cite inconsistencies between a claimant's testimony and the
objective medical evidence in discounting the claimant's testimony.  *Bray v.
Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1227 (9th Cir. 2009).

In this case, the ALJ noted that "the regular notations in [Plaintiff's]
treatment notes" indicated that Plaintiff did not exhibit any neurological symptoms
or mental health concerns at his medical appointments and that he appeared to have
normal attention span, concentration, mood, and affect, and was alert and
cooperative.  Tr. 20 (citing 266, 281, 284-86, 315, 319, 321-22).  With the
exception of Dr. Mabee's evaluation where he noted that Plaintiff did not exhibit

any mental health symptoms, Tr. 266, the treatment notes cited by the ALJ were generated from appointments at which Plaintiff sought treatment for ailments unrelated to his alleged disabilities in this case.

Plaintiff argues that the "majority of the record shows *abnormal* psychiatric observations," citing the opinions of Drs. Mabee, Toews, and Dougherty. ECF No. 14 at 17. Plaintiff cites to instances in the reports prepared by these doctors where Plaintiff did appear to exhibit abnormal behavior. *Id.* (citing Tr. 299, 334). But Plaintiff seems to miss the crux of the ALJ's reasoning. Based on the records cited by the ALJ, what the ALJ found incredible was the fact that, when Plaintiff presented to medical providers during "regular" office visits, he presented without abnormal symptoms. *See* Tr. 20 (citing Tr. 266, 281, 284-86, 315, 319, 321-22). But when Plaintiff presented for psychiatric evaluations for purposes of his disability claim, he presented abnormally. *See* Tr. 299, 334. Furthermore, even if Plaintiff was correct that a "majority" of the evidence supports that Plaintiff presented with abnormal psychiatric symptoms, this is not the standard by which the Court reviews the ALJ's decision. *See Tackett*, 180 F.3d at 1097-98 (Court will only reverse the ALJ's decision if it is not supported by substantial evidence, which is defined as being more than a mere scintilla, but less than a preponderance).

The ALJ did not err in citing the observations of Plaintiff's regular medical sources who observed that Plaintiff did not appear to be suffering from mental health impairments. These records constitute substantial evidence from which the ALJ could infer that Plaintiff was less than credible in his symptom reporting.

### 3.    Lack of mental health treatment

The ALJ's third reason for discounting Plaintiff's credibility, i.e., his "minimal and mild complaints of mental health concerns, and the lack of significant mental health treatment," is a specific, clear, and convincing reason.

In assessing a claimant's credibility, the ALJ may rely on unexplained or

inadequately explained failure to seek treatment or to follow a prescribed course of treatment. *Molina v. Astrue*, 674 F.3d 1104, 1113 (9th Cir. 2012). Failure to follow a course of treatment may be excused, however, if the claimant's noncompliance is attributable to his or her mental illness. *Id.* at 1114.

The ALJ found that Plaintiff's lack of mental health complaints and treatment suggested that he "is not particularly concerned about his mental health." Tr. 20. Furthermore, the ALJ noted that Plaintiff failed to follow through with Dr. Mabee's recommendation that he participate in individual counseling and medication management. Tr. 21. At the hearing, Plaintiff testified that he had seen a counselor in the past, but that he was not seeking additional treatment at the time of the hearing because he was afraid he would abuse medication prescribed to him. Tr. 78.

Given Plaintiff's history of drug and alcohol use, Plaintiff's concern that he might abuse psychiatric medication is admirable. But his concern fails to explain why he did not seek individual therapy as recommended by Dr. Mabee or why he apparently has never consulted a physician (outside of evaluations for SSI and State benefits) about his mental impairments and available treatments. Plaintiff argues that his failure to seek mental health treatment should be excused because not seeking treatment can be attributed to his mental health impairments. ECF No. 14 at 18. But given that Plaintiff participated in counseling in the past, and given that he gave other reasons for not seeking treatment, i.e., fear of abusing medication, it does not appear that Plaintiff's mental health impairments impacted Plaintiff's judgment regarding whether to seek mental health treatment. To the contrary, Plaintiff's testimony indicates that he made a conscious decision not to seek treatment.

Plaintiff further argues that, even if he participated in treatment, his low IQ functioning is "not amenable to treatment." ECF No. 14 at 18. But this argument is contrary to the reports of Drs. Mabee and Dougherty who both opined that

ORDER GRANTING DEFENDANT'S MOTION . . . - 11

Plaintiff could possibly benefit from mental health treatment and medication.  Tr. 270, 301.  Furthermore, the Court does not possess the expertise to decide whether Plaintiff's low IQ functioning is amenable to treatment.

The ALJ did not err by citing Plaintiff's failure to seek mental health treatment as a reason to discredit Plaintiff.

### 4.    Inconsistent Testimony

The ALJ's final reason for discounting Plaintiff's testimony, i.e., Plaintiff's inconsistent statements, is a specific, clear, and convincing reason.

In determining a claimant's credibility, the ALJ may consider "ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements . . . and other testimony by the claimant that appears less than candid." *Smolen*, 80 F.3d at 1284.

As pointed out by the ALJ, Plaintiff inconsistently reported his drug and alcohol use.  Tr. 20 (citing Tr. 73-74 (Plaintiff testifying that he last used alcohol five years prior to the hearing, denied using methamphetamine, last used cocaine ten to eleven years prior to the hearing, and used marijuana a week prior to the hearing); Tr. 271 (Dr. Mabee noting that Plaintiff has "been dependent on Cocaine, Opioids, Marijuana and Methamphetamine in the past"); Tr. 296 (Dr. Dougherty noting that Plaintiff reported he started using marijuana at age twelve, cocaine at age sixteen, experimented with acid at age fourteen, used methamphetamine from age eighteen to twenty four); Tr. 334 (Dr. Toews noting that Plaintiff "denies a history of using drugs")). The ALJ also noted that Plaintiff inconsistently reported the reasons why he stopped attending school.  Tr. 20 (citing Tr. 63 (Plaintiff testifying that he had "a hard time doing stuff by [him]self," was frustrated and didn't "understand a lot of stuff"); Tr. 265 (Dr. Mabee noting that Plaintiff "stopped going to school because he was using alcohol and drugs"); Tr. 295 (Dr. Dougherty noting that Plaintiff "stopped going to school because he was using alcohol and drugs")); *see also* Tr. 333 (Dr. Toews noting that Plaintiff "quit school

ORDER GRANTING DEFENDANT'S MOTION . . . - 12

due to multiple expulsions").

The ALJ reasonably concluded that, given Plaintiff's inconsistent reporting about his drug and alcohol use and the reasons for dropping out of school, Plaintiff's reporting of his symptoms was also suspect. *Smolen*, 80 F.3d at 1284; *see also Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) (ALJ did not err in citing a claimant's conflicting information about her drug and alcohol usage in rejecting the claimant's testimony). The ALJ did not err in citing Plaintiff's inconsistent statements as a reason to discredit Plaintiff.

**5.    Conclusion**

Other than the ALJ's error in using Plaintiff's ADL to discredit Plaintiff, the ALJ's adverse credibility determination is free of legal error and supported by substantial evidence.  The ALJ's error in using Plaintiff's ADL to discredit him was harmless given the additional valid reasons given by the ALJ to support the ALJ's adverse credibility determination.

**C.    Evaluation of Medical Evidence**

Plaintiff argues that the ALJ failed to properly credit the IQ scores assessed by Drs. Mabee and Toews and the opinions of Drs. Mabee, Dougherty, and Colby. ECF No. 14 at 10-14.  As the Court addressed the ALJ's evaluation of Plaintiff's IQ scores *supra*, and Plaintiff does not argue that the ALJ otherwise erred in evaluating the opinions of Dr. Toews, the following discussion is limited to whether the ALJ properly evaluated the opinions of Drs. Mabee, Dougherty, and Colby.

"In making a determination of disability, the ALJ must develop the record and interpret the medical evidence." *Howard ex. rel. Wolff v. Barhart*, 341 F.3d 1006, 1012 (9th Cir. 2003).  In weighing medical source opinions, the ALJ should distinguish between three different types of physicians: (1) treating physicians, who actually treat the claimant; (2) examining physicians, who examine but do not treat the claimant; and, (3) nonexamining physicians who neither treat nor examine

the claimant. *Lester*, 81 F.3d at 830. The ALJ should give more weight to the opinion of a treating physician than to the opinion of an examining physician. *Orn*, 495 F.3d at 631. The ALJ should give more weight to the opinion of an examining physician than to the opinion of a nonexamining physician. *Id.*

When a physician's opinion is not contradicted by another physician, the ALJ may reject the opinion only for "clear and convincing" reasons. *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991). When a physician's opinion is contradicted by another physician, the ALJ is only required to provide "specific and legitimate reasons" for rejecting the opinion of the first physician. *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983).

To the extent that the opinions of Drs. Mabee, Dougherty, and Colby support Plaintiff's allegation of disability, their opinions are contradicted by Rita Flanagan, Ph.D., a State agency psychological consultant, who opined that Plaintiff's impairments were not disabling. Tr. 104-08. Therefore, the ALJ was only required to provide specific and legitimate reasons for discounting the opinions finding Plaintiff disabled.

### 1.    W. Scott Mabee, Ph.D.

Plaintiff presented to Dr. Mabee for a consultative psychological evaluation in November 2009. Tr. 265-76. Dr. Mabee diagnosed Plaintiff with polysubstance dependence, early full remission (per client report); adjustment disorder with depressed mood; antisocial personality disorder (primary); and borderline intellectual functioning. Tr. 267. Dr. Mabee assessed Plaintiff with "severe" limitations in his ability to exercise judgment and make decisions and in his ability to respond appropriately to and tolerate the pressures and expectations of a normal work setting. Tr. 269. Dr. Mabee assessed Plaintiff with "marked" limitations in his ability to relate appropriately to co-workers and supervisors, to interact appropriately in public contacts, and to maintain appropriate behavior in a work setting. Tr. 269.

ORDER GRANTING DEFENDANT'S MOTION . . . - 14

1    In his medical source statement, Dr. Mabee found,

2

3    [Plaintiff] will be able to understand, remember and carry out simple
     verbal and written instructions.  He will be able to maintain his
4    attention and concentration for shor[t] periods of time.  His pace of
     performance and persistence will be below average.  He will work
5    best by himself and under stric[t] supervision.  However, he will
6    likely be unable to tol[]erate the supervision.  He will be able to ask
     questions.  He will be aware of normal hazards.  He will be able to
7    travel to unfamiliar places and use public transportation most of the
     time.
8

9

10   Tr. 269.  Dr. Mabee recommended Plaintiff take part in individual counseling,

11   vocational rehabilitation, and consult a physician to determine if medication would

12   help control his depressive symptoms.  Tr. 270.  Dr. Mabee opined that Plaintiff's

13   impairments would last between six and twelve months and that vocational training

14   or services would minimize or eliminate barriers to employment.  Tr. 270.

15       The ALJ gave some weight to Dr. Mabee's opinion.  Tr. 22.  The ALJ noted

16   Dr. Mabee's opinion that Plaintiff would likely be capable of working after

17   vocational rehabilitation was inconsistent with Dr. Mabee's assessment of several

18   "severe" and "marked" impairments.  Tr. 22.  The ALJ also reasoned that Dr.

19   Mabee, in reaching his conclusions, reviewed no medical records, did not observe

20   Plaintiff exhibiting any mental health symptoms, and based his opinions on

21   Plaintiff's unreliable self-reporting.  Tr. 22.  Furthermore, the ALJ reasoned that

22   Plaintiff's test scores resulted in an invalid profile suggesting that he over-reported

23   his symptoms.  Tr. 22.  Finally, the ALJ noted that Dr. Mabee opined that

24   Plaintiff's limitations would only last between six and twelve months.  Tr. 22.

25       The fact that Dr. Mabee failed to review Plaintiff's records is not a valid

26   reason to reject his opinions.  As Plaintiff has little history of seeking medical

27   treatment, it is likely that there were no records for Dr. Mabee to review.  The

28   ALJ's other reasons for rejecting Dr. Mabee's opinions, however, are specific and

legitimate reasons. *See Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005) (ALJ may rely on internal inconsistencies in discounting medical opinions);[1] *Thomas*, 278 F.3d at 957 (ALJ may reject a medical opinion that is "inadequately supported by clinical findings"); *Bayliss*, 427 F.3d at 1217 (medical opinion may be discounted if it relies on a claimant's unreliable self-report);[2] 42 U.S.C. §

_____

[1]Plaintiff argues that Dr. Mabee's recommendation that Plaintiff participate in vocational rehabilitation suggests that Dr. Mabee "did not think [Plaintiff] could work in a normal work setting without rehabilitation (and likely a sheltered work environment)." ECF No. 19 at 5. While this is a not an unreasonable interpretation of Dr. Mabee's opinion, the Court must defer to the ALJ's interpretation of the evidence when it is susceptible to more than one rational interpretation so long as the ALJ's findings are supported by inferences reasonably drawn from the record. *Molina*, 674 F.3d at 1111. In this case, the ALJ reasonably inferred that Dr. Mabee recommended that Plaintiff participate in vocational rehabilitation because Plaintiff had certain shortcomings, other than his impairments, that he needed to overcome prior to entering the workplace. Tr. 22.

[2]Plaintiff argues that the ALJ erred by finding Dr. Mabee's report entitled to less weight because it was based on Plaintiff's unreliable self-reporting. ECF No. 14 at 12-13. Specifically, Plaintiff argues that the ALJ erred by not "explain[ing] how she reached this conclusion." *Id.* (citing *Ghanim v. Colvin*, 763 F.3d 1154, 1162 (9th Cir. 2014)). In *Ghanim*, the Ninth Circuit reiterated the rule that an ALJ may discount a treating provider's opinion when the opinion is based "to a large extent" on a claimant's self-reports and not on clinical evidence. 763 F.3d at 1162. In that case, the Ninth Circuit found the ALJ erred when the physicians' reports contained their observations, diagnoses, and prescriptions, in addition to the claimant's self-reports, and the ALJ did not explain why the physicians' reports were "based more heavily" on the claimant's self-reports. *Id.*

ORDER GRANTING DEFENDANT'S MOTION . . . - 16

1382c(a)(3)(A) (disability must be premised on medically determinable physical or mental impairments that have "lasted or can be expected to last for a continuous period of not less than twelve months").  The ALJ did not err in evaluating Dr. Mabee's opinions.  Because the ALJ gave several valid reasons for rejecting Dr. Mabee's assessment of "severe" and "marked" limitations, the ALJ's error in citing to Dr. Mabee's failure to review past records was harmless.

### 2.    Roland Dougherty, Ph.D.

Plaintiff presented to Dr. Dougherty for a psychological evaluation in March 2011.  Tr. 294-304.  Dr. Dougherty diagnosed Plaintiff with cognitive disorder, NOS, rule out fetal alcohol effects; adjustment disorder with depression; social phobia; rule out PTSD; ADHD; alcohol dependence, in sustained remission; cocaine dependence, in sustained remission; methamphetamine dependence, in sustained remission; cannabis abuse, in sustained remission; intellectual functioning in the mild mental retardation to borderline range; and, antisocial and

---

The Court finds that, contrary to Plaintiff's contention, and unlike the ALJ in *Ghanim*, the ALJ in this case provided adequate reasons for finding that Dr. Mabee's report was based heavily on Plaintiff's unreliable self-reporting.  First, the ALJ noted that Plaintiff "demonstrated an invalid testing profile regarding emotional functioning, and that [Plaintiff] was over-reporting psychological, cognitive, and somatic symptoms."  Tr. 22 (citing Tr. 271).  Second, the ALJ noted that Dr. Mabee did not observe any symptoms of mental disorders.  Tr. 26 (citing Tr. 266).  The fact that Dr. Mabee could not rely on psychological testing to assess Plaintiff's impairments, and did not personally observe Plaintiff suffering from any mental disorders, suggests that Dr. Mabee instead relied mostly on Plaintiff's self-reports.  As such, the Court finds that the ALJ did not err in discounting Dr. Mabee's opinions based on the reason that Dr. Mabee relied on Plaintiff's unreliable self-reporting.

ORDER GRANTING DEFENDANT'S MOTION . . . - 17

1   paranoid personality traits.  Tr. 300-01.  Dr. Dougherty opined that Plaintiff's

2   prognosis was "guarded, though it might improve with appropriate mental health

3   and medication resources."  Tr. 301.  In his medical source statement, Dr.

4   Dougherty found,

> [Plaintiff] was pleasant and cooperative with [Dr. Dougherty].  His
> social skills appear to be fair.  His thinking was rational though he is
> likely to have some comprehension problems and his responses were
> at times tangential.  He loses interest when doing household tasks and
> this may become a problem in an employment situation.  He should be
> able to understand, remember and follow simple directions.  He has
> no significant successful work history.

Tr. 301.

The ALJ gave "little weight" to Dr. Dougherty's evaluation.  Tr. 22.  The
ALJ reasoned that Dr. Dougherty relied substantially on Plaintiff unreliable self-
reporting and Dr. Dougherty's medical source statement is vague, does not
describe the most Plaintiff can do, and includes limitations unrelated to Plaintiff's
mental health condition, i.e., "no significant work history."  Tr. 22 (citing Tr. 301).

The ALJ gave specific and legitimate reasons for giving little weight to Dr.
Dougherty's opinions.  An ALJ may reject a medical record heavily based on a
claimant's unreliable reporting, *Bayliss*, 427 F.3d at 1217, and as discussed *supra*,
the ALJ did not err in finding Plaintiff's symptom reporting incredible.[3]

_____

[3]Like his challenge to the ALJ's evaluation of Dr. Mabee's opinions
discussed in Note 2 *supra*, Plaintiff again challenges the ALJ's discounting of Dr.
Dougherty's opinion based on the grounds that it relied on Plaintiff's unreliable
self-reporting.  ECF No. 14 at 13.  The ALJ found that Dr. Dougherty "relie[d]
substantially on [Plaintiff's] subjective statements, which [were] not entirely
credible, throughout [Dr. Dougherty's] evaluation."  Tr. 22.  The ALJ continued,
"As an example, Dr. Dougherty cites the claimant's reported loss of interest in

ORDER GRANTING DEFENDANT'S MOTION . . . - 18

Furthermore, the ALJ did not err in observing that Dr. Dougherty's medical source statement was vague and improperly took into account non-medical factors. Dr. Dougherty's conclusions that Plaintiff would "likely . . . have some comprehension problems," that he "loses interest in doing household tasks," and that his responses are sometimes "tangential" do not present any specific, quantifiable limitations regarding Plaintiff's ability to work. In addition, in determining whether a claimant is disabled, doctors are not qualified to rely on non-medical factors, such as age and lack of formal education, that would make reentry into the job market difficult. *Sanchez v. Sect'y of Health & Human Servs.*, 812 F.2d 509, 511 (9th Cir.

---

household tasks and suggests this could be a problem in an employment situation." Tr. 22 (citing Tr. 301).

Upon reviewing Dr. Dougherty's 2011 evaluation, the Court agrees with the ALJ's conclusion that Dr. Dougherty's evaluation is heavily based on Plaintiff's self-reporting (both from Dr. Dougherty's review of Plaintiff's medical records and Dr. Dougherty's own questioning of Plaintiff). *See* Tr. 294-301. Dr. Dougherty apparently did not administer any psychological tests. Other than his mental status examination, there is little objective evidence to support Dr. Dougherty's opinions. Furthermore, as reasoned by the ALJ, the fact that Dr. Dougherty's medical source statement expressly accounts for Plaintiff's reported "lose . . . [of] interest when doing household tasks" shows that Dr. Dougherty essentially found Plaintiff's symptom reporting to be the most Plaintiff was capable of doing despite his impairments. *See* 20 C.F.R. § 404.1513(b)(6) (medical source statement describes "what [claimants] can still do despite [their] impairment(s)"). Given the absence of objective findings in Dr. Dougherty's evaluation, and Dr. Dougherty's incorporation of Plaintiff's self-reporting directly into Dr. Dougherty's medical source statement, the Court finds that the ALJ did not err in finding Dr. Dougherty's evaluation based heavily on Plaintiff's unreliable self-reporting.

ORDER GRANTING DEFENDANT'S MOTION . . . - 19

1987).  Thus, the ALJ properly gave no weight to the parts of Dr. Dougherty's

medical source statement that were vague and that took into account non-medical

factors.

The ALJ essentially incorporated the remainder of Dr. Dougherty's medical

source statement into the ALJ's RFC determination.  *Compare* Tr. 301 (Dr.

Dougherty concluding that Plaintiff has "fair" social skills and is able to

"understand, remember and follow simple directions") *with* Tr. 19 (ALJ finding

Plaintiff had the RFC to have "superficial interactions with both coworkers and the

general public" and to "understand, remember, and carry out simple, routine, and

repetitive tasks").

The ALJ did not err in evaluating Dr. Dougherty's opinions.

### 3.    Dr. Colby

As part of Plaintiff's application for State benefits, Dr. Colby completed two

forms -- dated June 15, 2010, and July 11, 2010 -- in which he opined that Plaintiff

met Listing 12.05 due to Plaintiff's full scale IQ score of 66 assessed by Dr.

Mabee.  Tr. 277-78; *see* Tr. 265 (Dr. Mabee's evaluation). The ALJ gave no

weight to Dr. Colby's opinion that Plaintiff met Listing 12.05 based on the ALJ's

finding that Plaintiff's low IQ scores were invalid.  Tr. 17.  As discussed *supra*, the

ALJ did not err in finding Plaintiff's IQ scores invalid and that Plaintiff failed to

meet his burden to satisfy the criteria of Listing 12.05C. Therefore, the ALJ

properly rejected Dr. Colby's opinion to the contrary.

### D.    RFC and Hypothetical Questions

Plaintiff argues that the ALJ failed to include all of Plaintiff's limitations in

the ALJ's hypothetical question to the VE.  ECF No. 14 at 19-20.

"Hypothetical questions posed to the [VE] must set out all the limitations

and restrictions of the particular claimant."  *Embrey v. Bowen*, 849 F.2d 418, 422

(9th Cir. 1988).  The hypothetical should be "accurate, detailed, and supported by

the medical record."  *Tackett*, 180 F.3d at 1101.  The testimony of a VE "is

ORDER GRANTING DEFENDANT'S MOTION . . . - 20

1  valuable only to the extent that it is supported by medical evidence." *Sample v.*
2  *Schweiker*, 694 F.2d 639, 644 (9th Cir. 1982).  The VE's opinion about a
3  claimant's RFC has no evidentiary value if the assumptions in the hypothetical are
4  not supported by the record.  *Embrey*, 849 F.2d at 422.  Nonetheless, an ALJ is
5  only required to present the VE with those limitations the ALJ finds to be credible
6  and supported by the evidence.  *Osenbrock v. Apfel*, 240 F.3d 1157, 1165-66 (9th
7  Cir. 2001).
8         In this case, the ALJ asked the VE if a person with Plaintiff's background
9  could work if the person was
10
11         [A]ble to work at all exertional levels except that this individual
12         would have the ability to understand, remember, and carry out simple,
           routine, and repetitive tasks; would be able to accept instructions from
12         supervisors and able to have occasional and superficial interactions
13         with both coworkers and the general public; and would be able to
14         work in a predictable workplace environment with only occasional
15         routine changes.
16  Tr. 85.  This hypothetical question included all the limitations that the ALJ
17  included in her RFC determination.  *See* Tr. 19.  The VE opined that such a person
18  would not be able to do Plaintiff's past relevant work as a child monitor.  Tr. 86.
19  But the VE concluded that such a person could perform a variety of other jobs
20  including kitchen helper, automobile detailer, commercial cleaner, cleaner II,
21  harvest worker (vegetables), and yard laborer.  Tr. 86-87.
22         Plaintiff's counsel asked the VE if a hypothetical person with the limitations
23  posed by the ALJ could work if the individual would need to be under strict
24  supervision twenty percent of the time and that the individual would not be able to
25  handle such supervision.  Tr. 91.  The VE opined that such a limitation would
26  preclude employment.  Tr. 91.
27         Plaintiff argues that the ALJ's hypothetical question fails to account for
28  Plaintiff's low IQ scores and the limitations assessed by Drs. Mabee, Dougherty,

and Colby.  As discussed *supra*, however, the undersigned concluded that the ALJ properly discounted the opinions of these doctors to the extent that they assessed greater limitations than those included in the ALJ's RFC determination.  The ALJ's hypothetical question to the VE was not in error because the ALJ included all the limitations the ALJ found to be credible and supported by the evidence. *Osenbrock*, 240 F.3d at 1165-66.

### CONCLUSION

Having reviewed the record and the ALJ's findings, the Court finds the ALJ's decision is supported by substantial evidence and not based on legal error. Accordingly,

**IT IS ORDERED:**

1.      Defendant's Motion for Summary Judgment, **ECF No. 17**, is **GRANTED**.

2.      Plaintiff's Motion for Summary Judgment, **ECF No. 14**, is **DENIED**.

The District Court Executive is directed to file this Order and provide a copy to counsel for Plaintiff and Defendant.  **Judgment shall be entered for Defendant** and the file shall be **CLOSED**.

DATED June 29, 2015.



_____
JOHN T. RODGERS
UNITED STATES MAGISTRATE JUDGE